FILED
 2008 Apr-23  AM 11:28
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JENNIFER F. PECK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.:** |
| ) | **5:07-CV-01540-VEH** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Jennifer F. Peck (hereinafter "Ms. Peck") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied her application for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB").[1] Ms. Peck timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## **FACTS AND PROCEDURAL HISTORY**

Ms. Peck was 50 years old at the time of her hearing before the Administrative Law Judge (hereinafter "ALJ"). (Tr. 36). She has an education level beyond high school. (Tr. 36-37). Her past relevant work experience includes positions as a drafter and a receptionist. (Tr. 37, 39). Ms. Peck claims disability due to impairment of vision of unknown etiology, ocular hysteria, degenerative disc disease, disc bulging, disc astrophyatic complex with mild impingement on the thecal sac at C5-6, and degenerative joint disease of the left temporomandibular joint, with an alleged onset date of July 10, 2005.[2] (Tr. 24). Ms. Peck has, since the alleged onset date, attempted to work part time (10 hours per week) as a receptionist, but was unable to continue this job due to the limitations caused by her impaired vision. (Tr. 37-38). The ALJ found that this job did not constitute substantial gainful activity, making her last day of work her alleged onset date of July 10, 2005. (Tr. 24).

Ms. Peck protectively filed an application for a period of disability and DIB on December 27, 2004. (Tr. 22). Her claim was initially denied on July 14, 2005. (Tr. 22). Ms. Peck filed a timely written request for a hearing before an ALJ on September 13, 2005. (Tr. 22). This hearing took place on October 30, 2006. (Tr.

---

[2]Ms. Peck has, during the period of time the appeal for this claim was pending, filed a new claim for benefits, which resulted in an award of ongoing benefits with an onset date of March 27, 2007. (Doc. 9 at 4).

22).  At the hearing, Ms. Peck amended her alleged onset date to July 10, 2005.  (Tr. 22).  The ALJ determined that Ms. Peck was not disabled and denied her claim on December 7, 2006.  (Tr. 30-31).  Ms. Peck filed a request for a review of the ALJ's decision on January 11, 2007.  (Tr. 18).  This request was denied on June 27, 2007.  (Tr. 5).

Ms. Peck filed a complaint on August 22, 2007, asking this court to review the decision of the ALJ.  (Doc. 1).  This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW[3]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390, 41, 91 S. Ct. 1420, 1421, 1432, 28 L. Ed. 2d 842 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable

---

[3]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish the entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 27, 2008.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 51 (7th Cir. 1999); *accord*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Peck had not engaged in substantial gainful activity since the amended alleged onset date of July 10, 2005. (Tr. 24). He also found that

Ms. Peck's ocular hysteria, degenerative disc disease, disc bulging, disc astrophyatic complex with mild impingement on the thecal sac at C5-6, and degenerative joint disease of the left temporomandibular joint were severe impairments, based upon the requirements in Regulations 20 C.F.R. § 404.1520(c) and § 416.920(c). (Tr. 24). The ALJ then determined that Ms. Peck did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations, 20 C.F.R. Part 404. (Tr. 26).

The ALJ found that Ms. Peck retained the residual functional capacity to perform light work, with the ability to frequently climb, stoop, crouch, kneel, and crawl; however, there were also extensive limitations given by the ALJ.[5] (Tr. 27). He then determined that Ms. Peck would be unable to perform any past relevant work. (Tr. 29). The ALJ then relied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "grids") and the testimony of a vocational expert to determine that, considering Ms. Peck's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

---

[5]More specifically, the ALJ noted that Ms. Peck could not work around ladders, ropes, or scaffolds, and she would be limited in the area of reaching in all directions to occasionally. (Tr. 27). She was also to avoid exposure to vibrations and avoid work around hazardous machinery and unprotected heights. (Tr. 27).

national economy that she could perform. (Tr. 29-30.) Finally, the ALJ also used the grids to determine that Ms. Peck was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible to receive DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 30).

## **ANALYSIS**

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6] Ms. Peck asserts that "substantial evidence does not support the decision denying disability benefits, and improper legal standards were applied." (Doc. 9 at 4). More specifically, she claims that the ALJ's failure to consider her diagnosis of conversion disorder as a severe impairment constitutes reversible error. (Doc. 9 at 6). In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## I.  THE ALJ DID NOT ERR BY FAILING TO CONSIDER MS. PECK'S DIAGNOSIS OF CONVERSION DISORDER AS A SEVERE IMPAIRMENT.

From the outset, it is worth noting that the ALJ found that Ms. Peck's statements concerning the intensity, duration, and limiting effects of her vision loss were not entirely credible. (Tr. 27). The ALJ noted that Ms. Peck testified that her vision was "like driving through rain" and that it had not gotten any better or worse since her alleged onset date of July 10, 2005; additionally, her vision loss limited her from carrying out many activities such as driving or reading. (Tr. 27). The ALJ noted that Dr. McNeal's report from May 2005 indicated that Ms. Peck was able to move around quite well for someone with vision loss; additionally, Dr. Porter's report from June 2005 found that Ms. Peck had no problems following him down the hall or ambulating down stairs. (Tr. 27-28). The ALJ also cited a physical therapist's report from October 2005, which noted that Ms. Peck indicated that she had to drive a lot and had just completed massage therapy school. (Tr. 28). Thus, the ALJ concluded that the notes from these reports were contrary to Ms. Peck's testimony at the hearing regarding her vision loss, limitations due to vision loss, and lack of improvement to her vision. (Tr. 28).

Looking to the dates of the psychological exams from Drs. Porter and Porier under which Ms. Peck was diagnosed with conversion disorder, the ALJ determined

that she had only sought psychological treatment from the period spanning June 2005 to March 2006. (Tr. 28). However, Ms. Peck failed to return for further treatment after March 2006. (Tr. 28). The ALJ concluded that her failure to seek additional treatment after March 2006, along with records from August 2006 that indicated her completion of massage therapy school and extensive driving, showed a marked improvement in her condition after March 2006. (Tr. 29). Thus, the ALJ found that all of Ms. Peck's mental limitations as assessed by Drs. Porter and Porier, which included the conversion disorder, failed to meet the 12-month duration requirement of 20 C.F.R. § 404.1509. (Tr. 28-29). Therefore, any and all psychological disorders, including conversion disorder, failed to survive step two of the five-step process in the Regulations, and the ALJ had no duty to determine whether conversion disorder meets or medically exceeds a listed impairment under step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (iii).

In this case, the ALJ specifically notes in his opinion that counsel for Ms. Peck contended that Ms. Peck met the criteria for listing 12.07, somatoform disorder. (Tr. 26); *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539-40 (6th Cir. 2007) (evaluating conversion disorder as a "Somatoform Disorder" under Listing 12.07); *see also Sims v. Barnhart*, 442 F.3d 536, 538-39 (7th Cir. 2006) (classifying conversion disorder and its accompanying visual impairments as somatoform

disorder). Putting aside the previously determined lack of credibility regarding Ms. Peck's vision loss, the ALJ evaluated Ms. Peck's vision loss of unknown etiology under the requirements of this listing and found that the required level of severity was not satisfied. (Tr. 26). More specifically, the ALJ noted that any disturbance to Ms. Peck's vision caused only a moderate restriction of activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. 26-27; *see also* Listing 12.07). Therefore, Ms. Peck's assertions that the ALJ "made no effort to address whether [her] condition might meet a listing" and that "the ALJ failed to even consider conversion disorder as a severe impairment" are not supported by the record. (*See* Doc. 9 at 5).

Ms. Peck, in her brief to the court, cites the case of *Ashford v. Barnhart*, 347 F. Supp. 2d 1189 (M.D. Ala. 2004), as being directly on point with the instant case. Ms. Peck's reliance upon the *Ashford* decision is misplaced. In *Ashford*, the ALJ failed to specifically consider bipolar disorder, the diagnosis of which was clearly indicated in the medical evidence of record, as an impairment. *Id.* at 1193-94. The court found that this constituted reversible error because the ALJ did not discuss it in his opinion or explain why it was not a severe impairment. *Id.* at 1194. The court conceded that bipolar disorder was a personality disorder, which the ALJ cited in his opinion. *Id.* However, the ALJ did not list either bipolar disorder or personality

disorders as a severe impairment in his opinion, nor did he explain why the evidence would not support a finding that either of the disorders was severe. *Id.*

The only point on which these two cases align is the ALJ's failure to specifically mention conversion disorder in his listings of severe impairments. *See id.* Outside of this one parallel, the cases are distinguishable. *Ashford* found that the ALJ had committed reversible error through his complete failure to even consider bipolar disorder in his analysis. *Ashford*, 347 F. Supp. 2d at 1194. More specifically, the court recognized that the ALJ stated at the beginning of the opinion that the claimant suffered from "personality disorders." *Ashford*, 347 F. Supp. 2d at 1194. However, the court went on to state, "While bipolar disorder is, admittedly, a personality disorder, [the ALJ] did not list either as a severe impairment in the body of his opinion." *Id.* This suggests that, had the ALJ analyzed whether the claimant's diagnosed personality disorders in general were severe impairments, there would have been no reversible error. *See id.* However, it did not hold that a failure to consider a diagnosed condition by its exact name as a severe impairment, by itself, constitutes reversible error. *See id.* This is the position Ms. Peck urges this court to take. (*See* Doc. 9 at 8).

Unlike *Ashford*, the ALJ did note that both psychologists, Drs. Porter and Porier, diagnosed Ms. Peck with conversion disorder. (Tr. 25). However, the visits

to these psychologists were based on Dr. McNeal's diagnosis of ocular hysteria, which is listed as a severe impairment. (Tr. 24, 25). As previously stated, the ALJ found that all of Ms. Peck's statements as to her vision loss were not credible, and he also found that all disorders diagnosed by the two psychologists did not meet the 12 month duration requirement. (Tr. 29). Although the ALJ did not specifically list conversion disorder as a severe impairment or specifically rebut the diagnosis of conversion disorder by name, he clearly considered it in the broader contexts of both ocular hysteria and psychologically diagnosed disorders and found that neither of these categories met or exceeded a listed impairment. (Tr. 26, 29). Therefore, there was not a complete failure to consider a diagnosed condition as in *Ashford* and, thus, no error exists in the record. Alternatively, to the extent that the ALJ committed error by not specifically identifying conversion disorder by name as a severe impairment, such error was harmless and therefore not reversible error because the ALJ's procedural omission did not substantively affect the outcome of Ms. Peck's disability claim.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and the Commissioner applied the proper legal

standard. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 23rd day of April, 2008.

 

**VIRGINIA EMERSON HOPKINS**
United States District Judge